The Illinois Central Railroad Company

*v.*

Stephen Houghton *et al.*

*Filed at Springfield September 27, 1888.*

1. Conveyance—*what estate passes—whether the fee.* A conveyance of a strip of land on each side of a railway, for the expressed purpose of constructing, maintaining and operating thereon a single or double track railroad, with all its necessary appurtenances, etc., to have and to hold the same to the company, it successors and assigns forever, "for all lawful uses and purposes incident to a full and indefeasible title in fee simple," etc., while it may not pass an estate in fee, yet so far as the right of possession for railroad purposes is concerned, the estate conveyed has most of the qualities of a fee. Under such a deed the right of possession conveyed is exclusive, and wholly inconsistent with the subsequent possession of the land, or any part of it, by the grantor.

2. Limitation—*twenty years' adverse possession—and herein, what constitutes an adverse possession.* The hostile possession of land under claim of title, when such possession is inconsistent with the owner's title, constitutes an adverse possession, and when such possession continues for twenty years, the owner of the title will be barred from his action for the recovery of such land.

3. To constitute an adverse possession sufficient to defeat the right of action of the party who has the legal title, the possession must be hostile in its inception, and so continued without interruption for the period of twenty years. It must be an actual, visible and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner. It need not, however, be under a rightful claim, or even under a muniment of title.

4. Nor is it essential that there should be proof that the party in possession made oral declarations of claim of title, but it will be sufficient if the proof shows that he has so acted as to clearly indicate that he did claim title. The occupation and use of land is the ordinary mode of asserting a claim of title, and no words can more satisfactorily assert such a claim.

APPEAL from the Circuit Court of McLean county; the Hon. Owen T. Reeves, Judge, presiding.

Messrs. Williams & Capen, for the appellant:

Where property is not subject to taxation, the seven years' statute of payment of taxes under color of title can not apply. *Wisner* v. *Chamberlin*, 117 Ill. 568.

No other taxes than those fixed by its charter can be assessed against the property of the Illinois Central Railroad Company. *Railroad Co.* v. *County of McLean*, 17 Ill. 291; Const. 1870, section regarding Illinois Central railroad.

. The deed from Walker to the Parks estops the Parks from asserting title contrary to that deed. This is so elementary as to not need the citation of authorities to support it.

The owner of the fee over which he grants an easement has the right to the use of the land in any way that does not hinder the use of the easement, and no act of the owner of the fee by such uses can be construed into a claim adverse to the easement. Cutting timber, grazing or cultivating the soil, are all acts that the owner of the fee has a right to do, provided they do not hinder or disturb the use of the easement. *Town of Oldtown* v. *Dooley*, 81 Ill. 258; Angell on Highways, secs. 302-304, *et seq;* Washburn on Easements, chap. 2, *158, et seq; Railway Co.* v. *Hartley*, 67 Ill. 439; *Railway Co.* v. *Railroad Co.* 100 id. 21; *Wiggins Ferry Co.* v. *Railroad Co.* 94 id. 83.

A purchaser of the fee, taking possession under a deed, with reservations contained in the deed, is presumed to hold possession in accordance with the terms of his deed; and to prove a possession adverse to the terms of the deed by acts,

such acts must be clear and unequivocal, and wholly inconsistent with the terms of the deed.

Acceptance of a deed, and taking possession under it, estops the grantee from asserting title different to the terms of his deed. *Town of Princeton* v. *Templeton*, 71 Ill. 68; *Pinckard* v. *Milmine*, 76 id. 453; *Warren* v. *Jacksonville*, 15 id. 236.

Mr. A. E. DeMange, for the appellees:

A right of way is an easement, an incorporeal hereditament, conferring no interest in the land. *Garrison* v. *Rudd*, 19 Ill. 563.

An easement or servitude is an incorporeal right affecting lands which belong to another, and is incapable of possession. The land charged with the servitude is in the possession of the owner. The use or exercise of the right of way gives no right of possession. 2 Washburn on Real Prop. (2d ed.) p. 85.

Ejectment, at common law, lies for the recovery of the possession of real property in which the plaintiff has the legal interest, and a possessory right not barred by the Statute of Limitations. It does not lie to recover an incorporeal hereditament. 1 Chitty's Pl. (13th Am. ed.) pp. 186, 187.

A right of entry under title in fee simple, fee tail, copy-hold for life or for years, will support an action of ejectment. But a mere right to a standing place or to use land will not. 1 Chitty's Pl. (13th Am. ed.) p. 188; 2 East, 190.

If, as appellant contends, the Walker deed conveyed a mere easement, then appellant's abandonment and non-user for twenty years, with adverse possession in the owner of the soil and his grantees, extinguished the easement. *Peoria* v. *Johnston*, 56 Ill. 51, and cases cited; *Corning* v. *Gould*, 16 Wend. 529; *Village of Winnetka* v. *Prouty*, 107 Ill. 225; 138 Mass. 225; *Pickett* v. *Dowdall*, 2 Washb. 107; *Holmes* v. *Railroad Co.* 8 Am. Law. Reg. 716.

As to the Limitation law as a defense, see *Schoonmaker* v. *Doolittle*, 118 Ill. 605; *Schneider* v. *Botsch*, 90 id. 577; *Weber*

v. *Anderson,* 73 id. 439; *Kerr* v. *Hitt,* 75 id. 59; *Noble* v. *Mc-Farland,* 51 id. 230.

Mr. Justice Bailey delivered the opinion of the Court:

This was an action of ejectment, brought by the Illinois Central Railroad Company against Stephen Houghton and James Houghton, to recover two strips of land, each fifty feet in width, the one seventy and the other eighty rods in length, being a part of section 22, township 23, north, of range 2, east, in McLean county, and adjoining, the one on the east and the other on the west, the strip of land one hundred feet in width, heretofore occupied by the plaintiff as its right of way. The trial, which was had before the court without a jury, resulted in a finding and judgment in favor of the defendants, and the plaintiff brings the record to this court by appeal.

On the 29th day of April, 1852, as seems to be conceded, William Walker was the owner in fee of the eighty-acre tract which includes the two tracts in controversy. The plaintiff's proof of title consists of a deed executed by said Walker and wife, dated April 29, 1852, conveying to the plaintiff, "for the purpose of constructing, maintaining and operating thereon, a single or double track railroad, with all its necessary appurtenances, and for all uses and purposes connected with the construction, repair, maintenance and complete operation of said railroad, the right of way over and through said tract," said right of way to comprise land of the width of one hundred feet on each side of said railroad: To have and to hold the same to the plaintiff and its successors and assigns forever, "for all lawful uses and purposes incident to a full and indefeasible title in fee simple, or in any way connected with the construction, preservation, occupation and sole enjoyment of said road and lands, of the width aforesaid." The deed also contained a covenant on the part of the plaintiff to erect and maintain such lawful fences as would divide the lands occu-

pied by the plaintiff from the adjoining lands on each side, and as far as possible prevent intrusion upon or passage across the lands and railroad occupied by the plaintiff.

It appears that the plaintiff, shortly after the execution of this deed, erected substantial post and board fences so as to inclose its right of way of the width of only one hundred feet, leaving the two strips of land now in controversy outside of its fences. Walker joined his farm fences with the fences inclosing the railroad, and occupied and used said two strips of land the same as he did the residue of his farm, and the evidence tends to show that he did so claiming to be the owner. Said land was partly under cultivation, partly in grass and in part covered with timber, and Walker cut some of the timber and grazed and cultivated the land not covered with timber, and continued in possession of the land as a part of his farm until November 28, 1855, at which time he conveyed it to George and James Park, said conveyance being by its terms made "subject to the right of way of the Illinois Central Railroad Company, as heretofore deeded by said party of the first part to said railroad company."

George and James Park went into possession under said deed and used the land the same as Walker had done. James Park died, and John E. Park, his sole heir-at-law, conveyed his interest in the farm to George Park, by deed dated March 18, 1869. George Park continued in possession until 1871 or 1872, when he died, leaving several heirs. On the 28th day of June, 1873, the administrator of George Park sold and conveyed that portion of the farm west of the railroad to Stephen Houghton in pursuance of an order of the county court of McLean county, and prior to making such sale the administrator had the land surveyed up to the railroad fence and sold it all to Houghton by the acre. Houghton and his son James took immediate possession of the land under said deed, and have ever since been in possession of the same claiming to own it. They have also during the same time been in possession

of the strip of land on the east side of the railroad as tenants of the heirs of George Park, having rented that portion of the farm east of the railroad of them.

The railroad fences remained where they were originally built from 1853 down to some time in the year 1886. On several occasions during that time fire from the railroad engines burned down portions of said fences and also destroyed the cross fences and crops on the land in controversy, and the plaintiff on each occasion rebuilt the railroad fences and paid the adjoining proprietors the damages done upon said lands. In 1886 the plaintiff took down said railroad fences and erected new fences fifty feet farther from its railroad track, thus entering and taking possession of the land in controversy. Stephen Houghton thereupon brought his action of forcible entry and detainer and recovered possession of said land, and then the plaintiff brought this suit.

By the declaration the plaintiff claims an estate in fee, and as the evidence tends only to establish the plaintiff's title to an easement in the premises sued for in the nature of a right of way, it is urged that no recovery could be had, upon the principle that where a plaintiff claims in fee he can not recover a less estate. We do not deem it necessary to determine whether this rule applies, since there is another ground upon which the judgment must be affirmed which seems to us to be entirely satisfactory.

The fact is established beyond controversy that, from the time the railroad fences were built, down to the date of the plaintiff's entry in 1886, a period of about thirty-three years, the defendants and the grantors through whom they derived their title, were in the actual, continuous, visible, open and exclusive possession of the land sued for; and it seems too clear for serious doubt that such possession was adverse to the plaintiff.

The deed under which the plaintiff claims required the plaintiff to erect and maintain fences dividing its right of way from

the adjoining lands, and it will be presumed that the fences were erected in pursuance of that requirement. Walker continued in possession up to the fences, claiming them as his boundary lines, and claiming to have established such lines by compromise with the plaintiff. The deed from Walker to George and James Park, it is true, was made subject to the plaintiff's right of way as deeded by Walker to the plaintiff, but they took and held possession precisely as Walker had done, up to the fences which Walker claimed as his boundary lines. Park's administrator sold the land on the west side of the railroad by metes and bounds, making the fence the boundary line, and since 1873 the defendants have been in possession of the lands on both sides of the railroad claiming title up to the railroad fences.

To constitute an adverse possession sufficient to defeat the right of action of the party who has the legal title, the possession must be hostile in its inception, and so continued without interruption for the period of twenty years. It must be an actual, visible and exclusive possession, acquired and retained under claim of title inconsistent with that of the true owner. It need not, however, be under a rightful claim, nor even under a muniment of title. It is enough that a party takes possession of premises claiming them as his own, and that he holds possession for the requisite length of time, with the continual assertion of ownership. *Turney* v. *Chamberlain,* 15 Ill. 271. It is not essential however that there should be proof that the party in possession made oral declarations of claim of title, but it is sufficient if the proof shows that he has so acted as to clearly indicate that he did claim title. No mere words could more satisfactorily assert a claim of title than a continued exercise of acts of ownership over the property for a period of more than twenty years. Using and controlling property as owner is the ordinary mode of asserting a claim of title, and it is indeed the only proof of which a claim of title

to a very large proportion of property is susceptible. *James* v. *Indianapolis and St. Louis Railroad Co.* 91 Ill. 554.

But it is insisted that the plaintiff's right of way, being a mere easement, the fee remaining in Walker and his grantees subject to the easement, the possession of Walker and his grantees is to be regarded as being held under their title and therefore not hostile to the plaintiff so as to constitute it an adverse possession. To this view we are unable to yield our assent. If the right of way of a railroad company were an easement the proper enjoyment of which was consistent with the possession and occupancy of the land by the owner of the fee, such possession and occupancy might be regarded as a mere exercise by the owner of the servient estate of his property rights, subject and in subordination to the easement. Such, however, is not the character of the easement which a railroad company acquires in the land covered by its right of way. As said in *Hazen* v. *B. and M. Railroad Co.* 2 Gray, 574, "the right acquired by the corporation, though technically an easement, yet requires for its enjoyment a use of the land, permanent in its nature, and practically exclusive." The same view was taken by the Supreme Court of Vermont in *Hurd* v. *R. and B. Railroad Co.* 25 Vt. 116, where, in discussing the interest obtained by a railroad company in its right of way by condemnation, the court say : "If that interest is regarded as a mere servitude or easement, the land nevertheless becomes so far the property of the corporation that their right is exclusive in its use and possession during its existence, as much so as that of the owner or occupant of the adjoining land. Those from whom the land was taken retain no right to its use or occupation for pasturage or otherwise. The object for which it is appropriated and used is wholly inconsistent with such right on the part of the former owner, as well as with that security to themselves and safety to the public which is necessary to enable the corporation to enjoy the franchises granted by their charter." In *Jackson* v. *R. and B. Railroad Co.* 25

Vt. 150, the same court, speaking through Mr. Chief Justice REDFIELD, says: "The railway company must, from the very nature of their operations, in order to the security of their passengers, workmen, and the enjoyment of the road, have the right at all times to the exclusive occupancy of the land taken, and to exclude all concurrent occupancy by the former owners in any mode and for any purpose." *T. and B. Railroad Co.* v. *Potter*, 42 Vt. 265; *K. C. Railway Co.* v. *Allen*, 22 Kan. 285.

In *Illinois Central Railroad Co.* v. *Godfrey*, 71 Ill. 500, this court held that the right of way was the exclusive property of the railroad company, upon which no unauthorized person had a right to be for any purpose; and in the opinion of this court in *C. and M. Railroad Co.* v. *Patchin*, 16 Ill. 198, it is said: "I presume the right to the land upon which railroads are built is not strictly analogous to the easement of the public in highways, leaving the fee in the owner of the soil, but is an absolute ownership in fee for railroad purposes."

While we are not disposed to hold that the deed from Walker to the plaintiff conveyed to the plaintiff an estate in fee in the right of way, it is clear that it conveyed an estate which, so far as the right of possession for railroad purposes is concerned, had most of the qualities of the fee. The right of possession thereby conveyed was exclusive, and was wholly inconsistent with the subsequent possession of the land or any part of it by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged.

The possession of Walker and his assigns, being wholly inconsistent with the plaintiff's title, and having been held under a claim of title on their part, has been hostile, and has constituted an adverse possession, and such possession having been continued for more than twenty years, the plaintiff's right to bring its action for the recovery of said lands is barred by the statute. The finding of the court was therefore in accordance with the evidence, and the judgment must be affirmed.

*Judgment affirmed.*

16—126 ILL.

Mr. JUSTICE MAGRUDER, dissenting: I can not concur in all that is said in this opinion. The doctrine, that the interest of a Railroad Company in its right of way is a sort of ownership in fee, is too broadly stated. Many of the cases, and, among others, the case of *C. and M. R. R. Co.* v. *Patchin*, 16 Ill. 198, which was decided in 1854, have no application to property condemned for right of way under our present constitution of 1870. The 13th section of the Bill of Rights, (Cons. 1870, Art. 2, sec. 13,) expressly provides that "the fee of land taken for railroad tracks, without consent of the owners thereof, shall remain in such owners, subject to the use for which it is taken."