## CHICAGO GREAT WESTERN RAILROAD COMPANY v. MINNIE B. ZAHNER.[1]

April 9, 1920.

No. 21,692.

**Deed for spur track — construction.**

1. A deed given by the owner of two lots conveying a portion thereof to the plaintiff railroad company for the construction of a spur track, reciting, after describing by metes and bounds the portion conveyed,

[1]Reported in 177 N. W. 350.

"such portions of lots three and four being deemed necessary and to be used for a track contemplated and to be laid by said Chicago Great Western Railway Company on said land for commercial purposes," conveyed a railroad right of way easement and not the fee.

**Same — recovery of possession by railroad.**

2. Under such a deed the plaintiff railroad company is entitled to the exclusive possession of the right of way easement. The owner of the servient estate is not entitled to a partial possession upon the theory that such possession will not disturb the railroad company, and the rail-road company may recover possession without showing that it has immediate need for railway purposes of the portion occupied by the owner of the servient estate, or that such occupancy disturbs the enjoyment of the right of way for railway purposes.

Action in ejectment in the district court for Ramsey county. The case was tried before Dickson, J., who made findings and ordered judgment in favor of defendant. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed.

*A. G. Briggs* and *Charles H. Weyl,* for appellant.

*Norton & Norton,* for respondent.

DIBELL, J.

Action of ejectment tried to the court. From a judgment for the defendant the plaintiff appeals. There are two questions:

(1) Whether a deed to the plaintiff railroad company conveyed the fee or a railroad right of way easement.

(2) If it conveyed only a railroad right of way easement, whether the defendant, the owner of the servient estate, can maintain possession of a portion of the right of way, not disturbing the actual use for railway purposes, until it is shown by the railroad that it needs possession thereof for railway purposes.

1. In 1905 David A. Secombe, the predecessor in title of the defendant, was the owner of lots 3 and 4 of block 1 in Minnesota Transfer Addition of St. Paul. He wanted a side-track or spur constructed from the plaintiff's line to a piece of property some distance to the northwest of his lots, the exact location of which is not shown, where he pur-

posed keeping his contracting outfit. He gave the plaintiff a deed of the rear portion of lots 3 and 4. He secured for it a right of way affecting lot 2, northerly of his lots, and lots 5 and 6, southerly thereof. The right of way granted was, substantially, of so much of the lots affected as was within 50 feet of the rails of the spur. The deed of lots 3 and 4 was a warranty conveying the lots to the plaintiff, "its successors and assigns, forever * * * to have and to hold the same * * * to the said party of the second part, its successors and assigns, forever." After describing by metes and bounds the portions of the two lots conveyed there was the recital: "Such portions of lots three and four being deemed necessary and to be used for a track contemplated and to be laid by said Chicago Great Western Railway Company on said land for commercial purposes."

The defendant, who a few years later succeeded to the Secombe title, occupies the front part of the two lots with a residence. She built a shed extending back on lot 4 to within six or eight feet of the spur track, in which she conducts a charcoal business. Other portions of the lots conveyed by the deed are used in some fashion in connection with the charcoal business. The portion of the right of way taken from lots 3 and 4 is the property in dispute.

The trial court held that the deed did not convey the fee but a railroad right of way easement. We concur in this view. There are cases which hold, as noted by the trial court in its memorandum, that a clause such as the one quoted does not limit the grant. The question is upon the intent of the parties. Within the principle of our holdings there was no intent to grant a fee, but an intent to grant a railroad right of way easement, which would revert upon abandonment. See Flaten v. City of Moorhead, 51 Minn. 518, 53 N. W. 807, 19 L.R.A. 195; Chambers v. Great Northern Power Co. 100 Minn. 214, 110 N. W. 1128; Norton v. Duluth Transfer Ry. Co. 129 Minn. 126, 151 N. W. 907, Ann. Cas. 1916E, 760; note 1 L.R.A.(N.S.) 806; note L.R.A. 1918B, 701, 705; note 6 Ann. Cas. 239, 242.

The deed conveyed to the plaintiff a railroad right of way easement with the rights which attend such an easement.

2. The trial court held that the defendant might use the right of way deeded by her predecessor in title, so long as such use did not dis-

turb the plaintiff in its use for railway purposes. It is not shown by the evidence that the railway company intends making any definite present use of the right of way occupied by the defendant other than the ordinary right of way use for purposes of traffic. After an attentive consideration we find ourselves unable to adopt the conclusion reached by the trial court.

There is authority for the claim that the owner of the servient estate may occupy land granted as an easement, so long as he does not interfere with the enjoyment of the use by the dominant owner, and this doctrine in some instances has been applied to railroad rights of way. In 33 Cyc. 189, the prevailing doctrine, applicable to railroads, is stated to be as follows: "As a general rule a railroad company has practically the right to the uninterrupted and exclusive possession and control of the land between the lines of its location, necessary for conducting its business, except where it is built on a public highway or over public crossings; and the former owner has no right to occupy the land conveyed in any mode or for any purpose without the company's consent, as for the purpose of cultivating crops on the right of way, unless such rights or privileges are conceded by the company or reserved by the grantor." The cases quite well support the rule stated and we think the rule accords with the weight of authority. Paxton v. Yazoo, etc., R. Co. 76 Miss. 536, 24 South. 536; Wilmot v. Yazoo, etc., R. Co. 76 Miss. 374, 24 South. 701; Hayden v. Skillings, 78 Me. 413, 6 Atl. 830; Troy & B. R. Co. v. Potter, 42 Vt. 265, 1 Am. Rep. 325; Pittsburgh, etc., Ry. Co. v. Jones, 86 Ind. 496, 44 Am. Rep. 334; New York, etc., R. Co. v. Armstrong, 92 Conn. 349, 102 Atl. 791; Cairo, V. & C. Ry. Co. v. Brevoort, 62 Fed. 129, 25 L.R.A. 527; Wright v. St. Louis S. W. Ry. Co. 175 Fed. 845; Illinois Cent. R. Co. v. Houghton, 126 Ill. 233, 18 N. E. 301, 1 L.R.A. 213, 9 Am. St. 581; Olive Sternenberg & Co. v. Sabine & E. T. Ry. Co. 11 Tex. Civ. App. 208, 33 S. W. 139; Pittsburgh, etc., R. Co. v. Peet, 152 Pa. St. 488, 25 Atl. 612, 19 L.R.A. 467.

The spur track became a part of the plaintiff's railway system. Liedel v. Northern Pac. Ry. Co. 89 Minn. 284, 94 N. W. 877; Ochs v. Chicago & N. W. Ry. Co. 135 Minn. 323, 160 N. W. 866, Ann. Cas. 1918E, 337. It was not constructed with the purpose of directly serving de-

fendant's two lots. When the right of way was acquired it became a part of the railway system devoted to public service, with no special relation to the lots now owned by the defendant. A railroad right of way, though we call it an easement, is an interest in property of a definite character. In Delisha v. Minneapolis, St. P. R. & D. Ele. T. Co. 110 Minn. 518, 126 N. W. 276, 27 L.R.A.(N.S.) 963, Chief Justice Start, in referring to such an easement and in holding that it could not be created in a homestead estate by deed without the wife of the owner joining, said: "Such an easement is a perpetual encumbrance upon, and an alienation of, an interest in the land, leaving the remaining fee of nominal value only." And in condemnation, where only an easement is acquired, the value of the fee remaining is presumptively nominal. Robbins v. St. Paul, S. & T. F. R. Co. 22 Minn. 286; Witt v. St. Paul & N. P. Ry. Co. 38 Minn. 122, 35 N. W. 862. Such is the general character of a railroad right of way easement in this state.

Well considered cases recognize that an easement for a railroad right of way differs in important respects from other easements, that the right of possession of the right of way is exclusive in the railroad, and that the question of the necessity of its use by the railroad at a particular time, and the question whether its partial occupancy by the owner of the servient estate can be maintained without impairing the enjoyment by the railroad, are not open to controversy whenever the servient owner chooses to take partial possession.

"An easement granted to a railway is essentially different from any other. The nature of railway service requires exclusive occupancy. A railroad company is held to the highest degree of care, and the exercise of this care necessarily requires that it should have complete dominion over its right of way." Cairo, V. & C. Ry. Co. v. Brevoort (C. C.) 62 Fed. 129.

"It follows [from the nature of an easement] that the easement in lands taken for the purpose of a railroad is obviously vastly different from that in lands appropriated to the various kinds of other public ways. * * * To this end it must have, practically, the exclusive possession and control of the land within the lines of its location, and the authority to remove therefrom all things growing thereon, the re-

moval of which it may deem necessarily conducive to the safe management of its road." Hayden v. Skillings, 78 Me. 413, 6 Atl. 830.

"The right of possession thereby [by a right of way deed] conveyed was exclusive, and was wholly inconsistent with the subsequent possession of the land or any part of it by the grantor or his assigns for purposes of grazing or agriculture, or as a part of the farm to which it originally belonged." Illinois Cent. R. Co. v. Houghton, 126 Ill. 233, 18 N. E. 301, 1 L.R.A. 213, 9 Am. St. 581.

"Although the right of the railroad company is but an easement, and not a fee, this does not preclude their having the sole and exclusive possession of the land while in the exercise of that easement. The fact that, upon the abandonment or surrender of their road and charter, the land would revert to the former owner, does not curtail their right to its exclusive use if necessary." Troy & B. R. Co. v. Potter, 42 Vt. 265, 1 Am. Rep. 325.

"The grant, by its charter, to the plaintiff's predecessor to locate, lay out and construct its railroad over Shaw's Cove, permanently devoted the space which the railroad company occupied under its grant to the exclusive use of the railroad company for railroad purposes. * * * The defendants recognize this general rule of law, but attempt to qualify it by the limitation that the exclusive occupation is only 'so far as this is necessary or convenient for the safe and proper operation of the railroad business.' The practical effect of such a qualification would place upon the railroad company the burden of proving, in each case, the necessity or convenience, and give to the riparian owner a right of passage over the tracks and a right to lay pipes or build a conduit under the tracks." New York, etc. R. Co. v. Armstrong, 92 Conn. 349, 102 Atl. 791.

"Unlike the use of a private way—that is discontinuous—the use of land condemned by a railroad company is perpetual and continuous. So the latter is likewise necessarily exclusive." New York, etc. R. Co. v. Trimmer, 53 N. J. Law, 1, 20 Atl. 761.

"A railroad right of way is a very substantial thing. It is more than a mere right of passage. It is more than an easement. * * * A railroad's right of way has, therefore, the substantiality of the fee, and it is private property even to the public in all else but an interest

and benefit in its uses. It cannot be invaded without guilt of trespass." Western U. Tel. Co. v. Penn. R. Co. 195 U. S. 540, 570, 25 Sup. Ct. 133, 49 L. ed. 312, 1 Ann. Cas. 517.

We think that the rule indicated is the prevailing one and is founded on sound principle and is the practical working rule. The railroad, charged with the performance of public duties which it cannot evade, and with liabilities which it cannot limit, should, for its own protection as well as in the interest of the public, be accorded the free use of its right of way, undisturbed by the claims of adjoining owners to a partial occupancy or use; and the question whether the adjoining owner can, with propriety and without disturbing the railroad's enjoyment of its easement, make use of the right of way, should not be left, as controversies arise from time to time, to the necessarily uncertain judgment of a tribunal passing upon disputed questions of fact. The railroad should not be put to a showing that it has present need of the whole width of its right of way or that the partial possession of an adjoining owner will impair its use or enjoyment for railway purposes.

We hold that the plaintiff is entitled to the exclusive possession of its right of way and that the defendant's possession is without right. Our holding is necessarily confined to the precise facts before us. It refers to a surface right of way which the owner of abutting property from which it came proposes to occupy. We have no question before us of the use of the right of way by the railroad for other than a railway purpose, or for the benefit of one of the general public to the disadvantage of another or of the adjoining owner; nor have we a question of the jurisdiction of the Railroad and Warehouse Commission to require a railroad to so use its right of way as to accommodate the public or to furnish shipping facilities to property owners along its right of way or to others who demand access to it.

Judgment reversed.

On April 30, the following opinion was filed:

DIBELL, J.

In the motion for reargument the defendant urges that the court in its opinion is in error in stating that Mr. Secombe wanted a side track to property northwest of lots 3 and 4 where he proposed keeping his

railroad contracting outfit. The conversation between Mr. Secombe and the representative of the railroad company was had with a plat before them, and as given in the transcript is a little confusing. Upon going over it again, and noting particularly the trial court's memorandum, we find that we were in error and that the lots which Mr. Secombe proposed using for his contracting outfit were lots 3 and 4. He procured and paid for a right of way over lot 2 to the north and procured a right of way over lots 5 and 6 to the south. It appears from the blue print on file that the spur track extended on a curve some 150 feet northwesterly of the most northerly part of lot 3. The special purpose of the extension does not appear. The track was not a private siding. It became as stated in the opinion a part of the plaintiff's system. The error does not change the result nor affect the controlling principle announced as to the character of a railway right of way easement. If the defendant is being deprived of railway facilities to which she is entitled, or if she should have facilities which she does not now have, nothing said in the opinion prevents the Railroad and Warehouse Commission giving relief, and, if she is entitled to relief in this action because of any fact not appearing in the record now before this court or not pleaded, she can apply to the trial court upon the going down of the remittitur. The opinion, with the correction made, stands and the motion for a reargument is denied.