## L. APANA, AS GUARDIAN OF THE PERSON AND PROPERTY OF LOO TAN CHEE (k) AND LOO SAN LAN (w), MINORS, *v.* J. P. KAPANO, GUARDIAN OF THE PROPERTY OF PULEWA (k) AND MAIE-HA (w), MINORS, AND KAM SACK ON, KUM FO SING, CHUN YOUNG, CHUN LOY, CHEE NAM, LEE KUP, KAM YOUNG TAI AND CHEE SING, CO-PARTNERS DOING BUSINESS UNDER THE FIRM NAME OF TONG WO WAI COMPANY AND WONG SAY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED FEBRUARY 16, 1911.          DECIDED FEBRUARY 20, 1911.

### HARTWELL C.J., PERRY AND DE BOLT, JJ.

EVIDENCE—*deed—statement in, as to grantor's title.*
> Statements in a deed as to the title claimed by the grantor do not render it inadmissible. for the purpose of showing the defendants' claim in a defense of title by adverse possession.

TRIAL—*instructions—effect upon verdict when inconsistent with each other or inapplicable to proved or admitted facts.*
> Instructions which relate to matters vital to the case and are so clearly inapplicable to the proved or admitted facts that if followed the verdict would be contrary to law cannot be otherwise than prejudicial and require reversal of the verdict.

Ápana v. Kapano, 20 Haw. 399.

OPINION OF THE COURT BY HARTWELL, C.J.

This was an action of ejectment, resulting in a verdict for the defendants, brought to recover possession of 2 1-3 acres of land at Ewa, Oahu, part of the ili of Ohua awarded to Haalilio by L. C. A. 6545, confirmed by R. P. 5694, conveyed by Haalilio to John Hamauka by deed of May 13, 1878, recorded in book 54, pp. 430, 431, and by him conveyed to Loo Ngawk by deed of July 19, 1883, recorded in book 81, pp. 272-274. It was shown by probate records that Loo Ngawk died in China July 18, 1896; that plaintiff, as administrator of his estate, filed an inventory including the land in question; that Loo Ngawk left one son, Loo Wing Chew, who died in China December 8, 1898, leaving a son and a daughter, minors, for whom the plaintiff is guardian. The plaintiff's evidence showed that the land was included in the award and patent and that the defendant Wong Sai was in possession August 14, 1908, when the action was brought; that the defendant Kapano, guardian of the minor children, two of the defendants, had leased the land to the defendant Wong Sai. The plaintiff, by competent and undisputed evidence, showed a clear title in his wards. The defense relied solely upon adverse possession, beginning with one Kale who died in 1898, a witness for the defendant thinking she died in February, a witness for the plaintiff saying, "If my memory tells me right she died about October, the latter part of October of that year." Before her death Kale conveyed the land to her grandson Maieha by deed of September 10, 1897, received for record September 21, and recorded in liber 172 on pp. 299, 300. Maieha died in 1899 and the defendant Kapano was appointed guardian of the property of his minor children, Pulewa and Maieha.

The plaintiff excepted to the admission in evidence of this deed to Maieha, to which he had objected, on the grounds (1) that "it does not appear that that is the land involved in this action which passed by that deed," (2) "as it has self-serving

declarations," and (3) "it is·not proved that Kale had any land to convey." The deed recites as its considerations the receipt from the grantee of $50, "my great affection for my own grandchild," and "his proper care of me in all things for my benefit while I was—arising from my being blind," and conveys to the grantee in fee, besides other land, the land which is in controversy, which is described in the deed by metes and bounds as "apana 1 of L. C. A. 6545 to Haalilio," and as containing 2.12 acres. The following is the·declaration in the deed objected to as self-serving: "This is a piece of land given to me on account of having lived or occupied it for a long period, more than twenty years in accordance with law, and more than forty years up to the present time, and that this land is my own."

The plaintiff relies on the ruling in *Makekau* v. *Kane,* 20 Haw. 203, 208, disallowing the defendant's question, in an action of ejectment. to a witness who had been in the employ of the defendant's grantor, whether he did "hear any statements ever made by Kimo as to who owned the land." The court, in overruling the exception to the disallowance of the question, said: "In the first place it does not appear that it was offered for the sole purpose of giving character to the possession, and in the second place the witness' attention was not called specifically to the time when Kimo was in possession. In answer to the question as stated the witness could well have testified to declarations made when Kimo was out of possession. Nor was any offer made by the defendants to prove by the witness that the declarations were made by Kimo while he was in possession or that they were of a claim of ownership in himself or such as to show that his possession was hostile to the title of the true owner." The exception to the granting of the plaintiff's motion to strike out the evidence of the witness that Kimo had told him that he had paid the taxes and collected the rents and profits during his lifetime was overruled as "a mere narration of past occurrences and inadmissible." On the other hand, in *Carter* v. *Lulia,* 16 Haw. 630, also an action of ejectment in which the

defense was adverse possession, a statement of the defendant, while in possession of the land, made to the lessor of "a piece of land near and perhaps including a part of the land in dispute," whose lessees, in attempting to cultivate a portion of the land in dispute, had been driven off by the defendant, in response to an inquiry by the lessor why she had put his tenants off, that "the property was hers and that David Baker (the lessor) had no right to it," was held to be admissible.

The distinction between the two cases is clear. In the present case the statement in the deed was made by the grantor at the time of its delivery and while in possession of the land and has no more nor less significance than the statements which frequently appear in conveyances of the source of the grantor's title, "being the same premises," etc., which, although in no sense evidence of the title, do not render the deed inadmissible as a whole. An instruction, if asked, would properly have been given to the effect that the recital was merely evidence of the fact that the claim of ownership was made by the grantor and was "not offered except as coloring the occupation, for which purpose it was admissible." 3 Wigmore on Evidence, §1778. Perhaps the deed describes the land substantially as it is described in the complaint, but in view of the conclusion we have reached in the case it is unnecessary to say whether the record shows that the land was sufficiently identified with that which is claimed by the plaintiff.

The plaintiff excepted to the following instructions given at the defendants' request, namely, (1) "The law assumes that those in possession of land are rightfully in possession, and those who claim that the persons in possession are unlawfully in possession must satisfy the jury by preponderance of the evidence that they have a good title and a better title than the defendants. The Plaintiffs must recover upon the strength of their own title;" (2) "The Court instructs the jury that although they may believe from the evidence that the land in controversy is covered by the deed under which the Plaintiffs claim, yet if

they further believe from the evidence that the defendants and those under whom they claim have been in the honest, peaceable, continuous and adverse possession of said land, paying taxes on the same, under color of title, for Ten Years prior to the institution of this suit, they must find for the Defendants;" (3) "Conveyances of land by one in possession are evidence of the hostile character of his possession;" (4) "The right of the plaintiffs to recover in this case rests on the strength of their own title, and they cannot recover by showing defects in the title of the defendants;" (5) "Holding land under a parole gift of a fee of the land for ten years will give a title by adverse possession, if it is open, notorious and undisputed;" (6) "Where the adverse claimant has remained in the continuous adverse possession of the land for the full statutory period necessary to operate as a bar to the recovery of possession by the owner the former acquires a valid title to the land, and a subsequent break in his actual possession does not in any way affect his right; the continuity of possession has reference to the time the statute is running and is not necessary after the bar has attached."

These are the usual instructions in actions of ejectment in which the defendant seeks to invalidate the plaintiff's title and does not attempt to show an independent title in himself by adverse possession, whereby he takes an affirmative position placing upon him the burden of proof. *Kaaihue* v. *Crabbe,* 3 Haw. 768, 774. It is true that at the request of the plaintiff the court correctly instructed the jury: "The plaintiff in this case has shown you by a direct chain of paper title that he is the owner of the land described in the complaint; those documents are prima facie evidence of their contents and would vest the title in the plaintiff subject to any adverse possession which the defendants might have shown you. Where the occupation of the land has been with the permission of the owner, in order that adverse possession may begin to run it is necessary that some direct notice be given to the owner that the occupier is holding hostile to him." But the instructions numbered above,

1 and 4, are entirely inapplicable to a defense of adverse possession in which the plaintiff's record title is shown and is not disputed by the defendants. The effect of inconsistent or conflicting instructions was considered in *Territory* v. *Richardson,* 17 Haw. 231, 237, a case of trial upon an indictment for embezzlement in which instructions applicable to an action of trover for wrongful conversion of money were held not to be nullified or cured by instructions appropriate to the case, and although in the opinion on the motion for a rehearing in *Sylva* v. *Wailuku Sugar Co.,* 19 Haw. 602, 682, the court said, "it may be that the opinion of the majority of the court in the present case states the rule about conflicting instructions in broader language than can be reconciled with the ruling in *Territory* v. *Richardson,*" the decision in the *Richardson* case has never been questioned and is a precedent which requires the verdict in this case to be reversed. It is not every instance of inconsistent instructions which justifies reversal, but when, as in this case, they relate to matters vital to the case and are so clearly inapplicable to the undisputed or admitted facts in evidence that if followed by the jury its verdict would be contrary to law, the error cannot be otherwise than prejudicial.

Exceptions sustained, verdict reversed, new trial ordered.

*A. A. Wilder (Thompson, Clemons & Wilder* on the brief) for plaintiff.

*W. C. Achi* for defendants.